**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALICIA HATFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 13-26 |
| ALLEGHENY COUNTY EXECUTIVE | ) | Judge Nora Barry Fischer |
| Rich Fitzgerald, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Alicia Hatfield ("Plaintiff") commenced this *pro se* civil rights action on January 7, 2013, seeking injunctive relief and monetary damages against Allegheny County Executive Rich Fitzgerald ("Fitzgerald"), the Mon Valley Regional Office of Allegheny County Children, Youth & Family Services ("CYF"), Marcia Sturdivant, the Executive Director of CYF ("Sturdivant"), Amanda Berube, a CYF caseworker ("Berube"), and Kathleen Tennant, a CYF supervisor ("Tennant"). As stated in her Amended Complaint (Docket No. 6) and her response to Defendants' motion for a more definite statement (Docket No. 16), Plaintiff is seeking redress for the alleged violation of her Fourth and Fourteenth Amendment rights. She is also asserting claims for alleged violations of the Health Insurance Portability and Accountability Act ("HIPAA") and/or the Privacy Act of 1974, as well as a claim for the intentional infliction of emotional distress. Plaintiff's various claims relate to the removal of her children on March 12, 2012 and the dependency proceedings which then ensued in the Family Division of the Court of Common Pleas of Allegheny County. As relief, Plaintiff seeks the "immediate return" of her

children "without stipulation," compensatory and punitive damages, "costs, legal fees and expenses." (Amended Compl. at p. 5.)

On April 5, 2013, Defendants filed a motion to dismiss the case in its entirety. (Docket Nos. 20, 21, and 26). Alternatively, Defendants requested that the Court abstain from hearing the federal case in light of the related family court proceedings which were then ongoing. *See Younger v. Harris,* 401 U.S. 37 (1971).

In a Memorandum Order dated June 28, 2013, (Docket No. 27), this Court granted Defendants' request for abstention insofar as it related to Plaintiff's claims for injunctive and declaratory relief, as the Court found that all of the elements necessary for *Younger* abstention were satisfied. (*See* Mem. Order at 3-5.) At the same time, however, this Court recognized that Plaintiff would not be entitled to monetary damages if she prevailed in the family court proceedings. (*Id.* at 5.) Accordingly, consistent with the principles laid out by the Supreme Court in *Deakins v. Monaghan,* 474 U.S. 193, 202 (1988), and the Third Circuit in *Williams v. Hepting,* 844 F.2d 138, 144-45 (3d Cir. 1988), this Court stayed Plaintiff's claim for monetary damages in the instant civil action during the pendency of the related state court proceedings. (*Id.*) The Court directed the parties to provide notice when the state family court proceedings concluded, and it gave Plaintiff a thirty-day period thereafter in which to move for a reopening of this litigation. (*Id.* at 6.)

Consistent with the Court's directive, Plaintiff moved to reopen the case following notice of the completion of the state court proceedings, (Docket No. 29), and the motion was granted on March 10, 2016, (Docket No. 34). On April 4, 2016, Defendants filed a renewed motion to dismiss the case, (Docket No. 36) and supporting brief, (Docket No. 37). Plaintiff filed her response on May 2, 2016, (Docket No. 38), making Defendants' motion ripe for adjudication.

## II. STANDARD OF REVIEW

A. The Court's Rule 12(b)(6) Standard of Review

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). To survive a Rule 12(b)(6) challenge, the plaintiff's "'[f]actual allegations must be enough to raise a right to relief above the speculative level....'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis in the original)). "Thus, 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Although the Court must accept the allegations in the complaint as true, "'[it is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir.2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, the plaintiff must plead facts which permit the court to make a reasonable inference that the defendant is liable. *Twombly*, 550 U.S. at 556–57; *Iqbal*, 556 U.S. at 678.

Consistent with these principles, the Third Circuit Court of Appeals has prescribed a three-step analysis for purposes of determining whether a claim is plausible. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Second, the court should "peel away" legal conclusions that

are not entitled to the assumption of truth. *Id.; see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Third, the court should assume the veracity of all well-pled factual allegations and then "'determine whether they plausibly give rise to an entitlement to relief.'" *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). This third step of the analysis is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

B. The Court's Factual Scope of Review

Generally, a district court may not consider matters outside of the complaint when ruling on a Rule 12(b)(6) motion to dismiss. "If, on a motion under Rule 12(b)(6) ..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). There is an exception to this rule, however: for Rule 12(b)(6) purposes, courts may consider (i) exhibits that are attached to the complaint; (ii) matters of public record; and, (iii) any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)).

In this case, at the Court's direction, the parties have supplied the records from the related family court proceedings. There does not appear to be any dispute concerning the authenticity of these records. Because these proceedings are a matter of public record, it is appropriate for the Court to consider them in adjudicating the pending motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426; *Pension Benefit Guar. Corp.*, 998 F.2d at 1196.

C. Pro Se Litigant

In this case, Plaintiff is proceeding *pro se*. As a general matter, courts must review *pro se* pleadings under a less stringent standard than would be applied to counseled pleadings. *See Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir.2003). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 245 (3d Cir. 2013). *See also Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) ("While a litigant's *pro se* status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds *pro se*.") (citation omitted).

**III. DISCUSSION**

A. Factual Background

Plaintiff is the natural mother of four minor children: A.F., B.H., J.H., and M.M. The state court records in this case indicate that, on February 22, 2012, Defendant Berube, a caseworker for CYF, gained access to Plaintiff's home, during which time she obtained photos of the upstairs area, which she described as being "completely gutted" with wires exposed. (*See* Docket No. 33-3 at p. 119.) According to Berube's written account of the incident:

> [t]here were concerns with broken windows in the home, outlet exposures and potential dangers of the ceiling collapsing downstairs. The family is still not able to use water in their kitchen.... During this visit, Mother was mostly yelling at Caseworker and vulgar with her language. Mother stated that she did not want Caseworker making any type of unannounced visits to her home...

(*Id.*)

On March 12, 2012, Berube filed applications with the Allegheny Court of Common Pleas Family Court, Juvenile Division, for emergency protective custody of Plaintiff's four children. The various applications contained a common statement of allegations in support of Berube's request for emergency protective custody. The applications, which were approved and signed by Tennant, alleged:

> OCYF is requesting an ECA for the children due to the lack of cooperation of the parents, [domestic violence] and the safety conditions of the home. The complete upstairs of the home is gutted and wires are completely exposed. Downstairs there is a broken window in the living room. The home smells of animal urine. On 3/10/12 Mother reported to the in-home worker that she was leaving the home due to abuse that is occurring in the home by Father Steve Fey. Mother reported that she is tired of the maltreatment Mr. Fey does to [J.H.]. Caseworker spoke with Mother on 3/12/12 regarding the abuse. Mother refused to provide any information to Caseworker as to the abuse. Mother states that she is moving out of the home but would not provide any information to Caseworker. The family was not cooperative with Family Group Decision Making. This family has a history with OCYF due to [domestic violence] and conditions of the home. It appears that [A.F.] has a speech delay.

(*See* Docket No. 33-1 at p. 109; Docket No. 33-2 at p. 103; Docket No. 33-3 at p. 129; Docket No. 33-4 at p. 100.)

On the same day that Berube's application was filed, the Hon. Cathleen C. Bubash of the Allegheny Court of Common Pleas, Family Court Division issued an order for temporary emergency protective custody of the children. (*See* Docket No. 33-1 at p. 106; Docket No. 33-2 at p. 100; Docket No. 33-3 at p. 126; Docket No. 33-4 at p. 97.) Judge Bubash found that "[s]ufficient evidence was presented to prove that continuation or return of the child[ren] to the home of Alicia Hatfield... is not in the best interest of the child[ren]" and would be "contrary to [their] welfare." (*Id*.) The court further found that preventative services were reasonably denied "due to the necessity for emergency placement," and the agency's level of effort in this regard was reasonable "due to the emergency nature of the situation, safety considerations, and circumstances of the family." (*Id*.)

Following their removal from Plaintiff's home, each of Plaintiff's four children became the subject of a separate state court dependency proceeding. (*See generally* Docket Nos. 33-1, 33-2, 33-3 and 33-4.) On April 16, 2012, the court found each of Plaintiff's children to be a "dependent child" within the meaning of Pennsylvania's Juvenile Act, 42 Pa. C.S.A. 6302. (*See* Docket No. 33-1 at p. 79; Docket No. 33-2 at p. 74; Docket No. 33-3 at p. 97; Docket No. 33-4 at p. 71.) Three of the children were placed in the home of their maternal grandmother, while the fourth was placed in a shelter. (*See* Docket No. 33-1 at p. 82; Docket No. 33-2 at p. 77; Docket No. 33-3 at p. 100; Docket No. 33-4 at p. 74.)

Ultimately, M.M. and B.H. were adopted by their maternal grandparents. (*See* Docket No. 33-2 at p. 112; Docket No. 33-4 at p. 348.) A.F. was eventually placed with her father, Steven Fey. (Docket No. 33-1 at p. 4.) Mr. Fey was granted primary physical and legal custody of A.F., while Plaintiff retained limited visitation rights. (*Id.* at p. 6, 11.) J.H. was ultimately returned to Plaintiff's custody after lengthy court proceedings and a determination by the court that Plaintiff had substantially complied with the court-approved plan for reunification.[1] (*Id.* at pp. 1-2.)

During the pendency of the family court proceedings, Plaintiff filed this lawsuit. Her amended complaint, (Docket No. 6), purports to allege claims under 42 U.S.C. §1983[2] for the alleged violation of her Fourth Amendment right to be free from unreasonable searches and seizures and her Fourteenth Amendment rights to due process and equal protection of the laws.

---

[1] There is no indication in the record that the orders of the state family court were ever appealed by Plaintiff.

[2] Section 1983 provides a private right of redress as against:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ...

42 U.S.C. §1983.

The precise parameters of these constitutional tort claims are difficult to ascertain. The amended complaint indicates that the claims are based on the allegedly "groundless removal" and "custodial maltreatment" of Plaintiff's children, (Amended Compl. ¶ 1), the "exclu[sion]" of Plaintiff from her "parental dut[ies]," and the Defendants' "unreasonable demands" that Plaintiff undergo mental health and domestic violence counseling as part of the court-approved reunification plan. Plaintiff's response to Defendants' motion for a more definite statement, (Docket No. 16), adds further content but hardly clarifies her legal theories. Construing the document liberally, the Court perceives that Plaintiff is alleging that:

- she and her children were improperly forced to vacate her premises;

- Berube gained entry to her home through "threats and trickery" and then conducted a warrantless search without probable cause; and

- Plaintiff was never allowed to view the court orders authorizing the children's removal.

(Docket No. 16 at pp. 2-3.) To further complicate matters, Plaintiff has set forth a number of purported "causes of action" in her "more definite statement" which are not viable claims in and of themselves, but which might arguably relate to Plaintiff's §1983 claims. These include claims for alleged: "fraud" on the family court, (Count 3); "use of hearsay evidence," (Count 4); "[t]aking [Plaintiff's] children under false pretenses," (Count 5); "[d]etention of children without finding of imminent danger or serious physical injury," (Count 6); "interviewing children without parent present," (Count 7); "continuing detention after learning no basis to do so," (Count 8); and, "harassment," (Count 9). (*Id*. at pp. 3-5.) Finally, Plaintiff's §1983 claims appear to encompass her complaint about a 2007 incident in which she and her children were allegedly removed "unlawfully" from their previous home following reports by Plaintiff of sexual abuse that had been committed by her paramour, who was by then already out of the house. (*Id*. at p. 2)

8

Apart from her federal §1983 claims, Plaintiff has asserted federal claims based on alleged violations of HIPAA, 42 U.S.C. §1320, and/or the Privacy Act of 1974, 5 U.S.C. 522a. These claims are based on the allegation that Berube and Tennant wrongly disclosed the mental health diagnoses of Plaintiff and her children in an August 6, 2012 court summary that was shared with two of the children's fathers. (Docket No. 6 at ¶4; Docket No. 16 at p. 3, ¶2.)

In addition to the foregoing federal claims, Plaintiff alleges a state law claim against CYF and Berube for the intentional infliction of emotional distress. In general, Plaintiff avers that she suffered psychological injury as a result of the events surrounding the removal of her children and the ensuing family court proceedings. (Docket No. 16 at p. 5.)[3]

B. Applicability of the Rooker-Feldman Doctrine

Defendants' primary argument for dismissal of this action rests on the *Rooker-Feldman* doctrine. This doctrine derives from two opinions issued by the United States Supreme Court: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Pursuant to *Rooker–Feldman*, "federal courts lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010). Application of the doctrine is narrowly restricted to "cases brought by state-court losers complaining of injuries caused by state-court judgments ... and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). In order for the doctrine to apply, it must be shown that: (1) the federal plaintiff lost in state court; (2) the

---

[3] Plaintiff's "more definite statement" also purports to assert a cause of action for "fraud"; however, the allegations pertain to Berube's involvement in allegedly affixing Plaintiff's electronic signature to certain court documents that Plaintiff never reviewed or agreed to. (*See* Docket No. 16 at p. 3, ¶3 "Fraud."). It thus appears that the claim does not involve any fraud upon Plaintiff but, rather, an alleged fraud upon the state court. To the extent this alleged "fraud" has relevance, it is in the context of Plaintiff's federal due process claim under §1983. Therefore, the Court does not construe the "fraud" allegation as a separate cause of action in this litigation.

plaintiff is complaining of injuries caused by the state-court judgment; (3) the judgment was rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. *Great W. Mining*, 615 F.3d at 166 (internal quotation marks omitted)(quoting *Exxon Mobil*, 544 U.S. at 284).

Upon review of Plaintiff's allegations and the state court records, it appears that certain aspects of this litigation are barred by *Rooker-Feldman*. In significant measure, Plaintiff is complaining of the removal of her children from her custody. To that end, she seeks (among other things) an injunction from the court that would order their return "without stipulation." (*See* Amended Compl. at p. 5, "Prayer for Relief.") To the extent Plaintiff seeks a court order directing that B.H. or M.M. be returned to her custody, she is essentially inviting this Court to review and reject the state court's orders that permitted the removal of these two children from Plaintiff's home, terminated Plaintiff's parental rights, and approved the adoption of B.H. and M.M. by their maternal grandmother. Similarly, to the extent Plaintiff seeks an order from this court directing A.F.'s return, she is effectively inviting this court to override the state court's dependency determination and custody ruling.

This Court cannot review, negate, or provide relief that would otherwise invalidate the state court's custody or adoption orders. Thus, to the extent Plaintiff is asking this court to direct the return of B.H., M.M., or A.F., her claims are barred by *Rooker-Feldman*. *See Bass v. New Jersey,* --- F. App'x ---, No. 15-2486, 2016 WL 2832703, at *2 (3d Cir. May 13, 2016) (*Rooker-Feldman* required dismissal of plaintiff's complaint about the loss of his parental rights, where plaintiff's injuries flowed from state court judgment and awarding relief would require the district court to invalidate the state court's judgment); *Khalil v. New Jersey Div. of Child Protection and Permanency,* 594 F. App'x 88, 91 (3d Cir. Feb. 4, 2015) (where it was

"impossible" for federal court to grant plaintiff's relief without concluding that the foundation for the state court's opinion terminating plaintiff's parental rights was incorrect, thereby rejecting its judgment, plaintiff's claim was barred by *Rooker-Feldman*); *Santos v. Sec'y of D.H.S.,* 532 F. App'x 29, 32 (3d Cir. April 24, 2013) (affirming dismissal on *Rooker-Feldman* grounds "[t]o the extent that Santos seeks an order granting him custody of his children and reinstating his parental rights"); *Young v. Dubow*, 411 F. App'x 456 (3d Cir. 2011) (affirming dismissal of complaint filed by mother against all entities and persons connected to state court proceedings that had awarded child custody to father); *Johnson v. City of New York*, 347 F. App'x 850, 852 (3d Cir. 2009) (affirming district court's dismissal of plaintiff's claims that child services improperly removed his children for abuse and neglect, because *Rooker-Feldman* doctrine barred review); *White v. Supreme Court of N.J.*, 319 F. App'x 171, 173 (3d Cir. 2009) (affirming district court's refusal to hear child custody case under *Rooker-Feldman*); *Rodriguez v. Montgomery Cty. Office of Children and Youth,* Civil Action No. 15-6186, 2016 WL 2897470, at *4 (E.D. Pa. May 17, 2016) (holding that *Rooker-Feldman* barred review of plaintiff's claim for injunctive and declaratory relief that essentially asked the federal court to find state court's dependency determination to be incorrect).

Defendants also contend that *Rooker-Feldman* bars Plaintiff's claim relative to J.H., but it seems more appropriate to conclude that Plaintiff's claim for injunctive relief relative to J.H. is now jurisdictionally defective on grounds of mootness. Article III of the United States Constitution requires that "an actual controversy must be extant at all stages of [the Court's] review, not merely at the time the complaint is filed." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 247 (3d Cir.2013) (quoting *Genesis Healthcare Corp. v. Symczyk*, ⸺ U.S. ⸺, 133 S.Ct. 1523, 1528, 185 L.Ed.2d 636 (2013)). Consequently, a claim that is moot presents a

separate insurmountable jurisdictional defect. *See Mollett v. Leicth*, 511 F. App'x 172, 173 (3d Cir. 2013) ("If a claim does not present a live case or controversy, the claim is moot, and a federal court lacks jurisdiction to hear it.") (citation omitted); *Goodmann v. People's Bank*, 209 F. App'x 111, 113 (3d Cir. 2006) (noting that a "District Court lacks subject matter jurisdiction when the controversy has become moot" and affirming the dismissal of a mooted civil action pursuant to Fed. R. Civ. P. 12(b)(1)); *Weiss v. Regal Collections*, 385 F.3d 337, 340 (3d Cir. 2004) (a court no longer has subject-matter jurisdiction when a claim is moot because its jurisdiction is limited to "cases and controversies" under Art. III of the Constitution). "An action is rendered moot when 'an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during the litigation.'" *Camesi*, 729 F.3d at 247 (quoting *Szmczyk*, supra, at 1528) (internal quotation marks omitted).

Here, it is undisputed from the state court record that J.H. was returned to Plaintiff's care and custody following a lengthy period of court supervision, which culminated in the court's finding that Plaintiff and J.H. had demonstrated substantial compliance with the court's permanency plan. (*See* Docket No. 33-3 at p. 1.) Accordingly, Plaintiff's request for injunctive relief is moot insofar as it relates to J.H., and that aspect of her case will be dismissed for lack of subject matter jurisdiction.

Notwithstanding the foregoing, the Court finds that Plaintiff's claims are *not* jurisdictionally barred to the extent she is seeking compensatory damages for harm that is not fairly traceable to the adverse court orders, including any alleged misconduct on the part of the Defendants which predated the adverse family court orders. *See, e.g., Bass,* 2016 WL 2832703 at *2 (*Rooker-Feldman* did not bar plaintiff's claims based on defendants' alleged misconduct "preceding and allegedly resulting in the state-court judgment," including his claim that

defendants conspired to deprive him of due process by submitting fraudulent or misleading evidence to the court); *B.S. v. Somerset Cty.,* 704 F.3d 250, 260 (3d Cir. 2013) (injury that was traceable to defendants' actions, as opposed to the state court orders those actions allegedly brought about, were not barred by *Rooker-Feldman*); *Rodriguez,* 2016 WL 2897470, at *4 (claim for money damages was not barred where it arose from complaints about how the defendants acted prior to the dependency hearing which resulted in the adverse judgment). Here, Plaintiff has alleged – among other things – that: Berube conducted an illegal search of her home; Berube perpetrated a fraud on the court and/or supplied inaccurate information to the court; Plaintiff's children were subjected to "maltreatment" while in the custody of third parties; Plaintiff was denied access to court orders authorizing the children's removal; and private mental health information was disclosed against her wishes. Because claims such as these are grounded on alleged misconduct that is independent of the adverse state court orders, they are not subject to dismissal on *Rooker-Feldman* grounds.

This is not to say that all of Plaintiff's claims are sufficiently pled or will ultimately be meritorious. As is discussed below, certain of Plaintiff's claims fail to state a cognizable basis for relief; others may be subject to *res judicata* or other defenses that have not been raised in the pending motion. However, the salient point is that "the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Shapiro v. McManus*, --- U.S.---, 136 S. Ct. 450, 455-56 (2015) (quotation marks omitted). Accordingly, the Court will consider Defendants' other arguments for dismissal.

C. Plaintiff's Claims Against Fitzgerald and Sturdivant

Defendants move for the dismissal of all §1983 claims asserted against Fitzgerald and Sturdivant on the grounds that Plaintiff has failed to plead their personal involvement in the alleged wrongdoing. This argument is well-taken.

In order to maintain a §1983 lawsuit against an official in his or her individual capacity, a plaintiff must establish the official's personal involvement in the alleged wrongdoing. *See C.N. v. Ridgewood Bd. of Educ.,* 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva,* 226 F.3d 198, 201–02 (3d Cir.2000) (*en banc*)). A supervisory defendant may be liable if he directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207-08 (3d Cir. 1988).

Here, the caption page of Plaintiff's Amended Complaint indicates that Fitzgerald and Sturdivant are being sued "jointly, severally, and individually." Despite having named Fitzgerald and Sturdivant as defendants to this lawsuit who are being sued in their personal capacities,[4] Plaintiff has failed to plead any facts showing their personal involvement in the alleged wrongdoing that is the subject of her claims. In fact, Plaintiff has not pled any facts at all relative to Fitzgerald or Sturdivant. Accordingly, Plaintiff has failed to state a plausible basis for

---

[4] Notwithstanding Plaintiff's designation of her claims as individual capacity suits, she appears to suggest in her brief that she is asserting claims against Fitzgerald and Sturdivant in their official capacities. (*See* Pl.'s Br. Opp. at 3 ("... Plaintiff has established Monell Liability as to naming the County Officials in their "official capacity"...), Docket No. 38.) Plaintiff cannot amend her pleading through a brief, *see Jamel Brockington v. C/O Wishenfsky,* No. 3:12-CV-482, 2016 WL 2736078, at *5 (M.D. Pa. May 11, 2016)(citing *Penn ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988)), so this Court will construe her claims against Fitzgerald and Sturdivant as they have been pled. Moreover, to the extent Plaintiff's claim against Sturdivant can be construed as an official capacity claim, it is redundant of her claim against CYF, and subject to dismissal on that basis. *Hafer v. Melo,* 502 U.S. 21, 25 (1991) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). In addition, Plaintiff's claim for punitive damages cannot be asserted against CYF or against Fitzgerald or Sturdivant in their official capacities. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981); *Miller v. Fayette Cty.,* No. 2:15-CV-1590, 2016 WL 1555526, at *8 (W.D. Pa. Apr. 18, 2016).

relief under §1983 against these Defendants. The claims against Fitzgerald and Sturdivant will therefore be dismissed.

D. Plaintiff's Claims Against CYF

Defendants also move to dismiss Plaintiff's claims against CYF on the grounds that no theory of municipal liability has been stated. In order to assert a claim for municipal liability under §1983, a plaintiff must plead the existence of a municipal policy or custom that caused the alleged violation of his constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009). A plaintiff may demonstrate the existence of a government policy or custom in a number of different ways. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir.1990). "Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). Custom, in contrast, can be proven by demonstrating that a given course of conduct, although not specifically endorsed or authorized by state or local law, is so well-settled and permanent as virtually to constitute law. *Bielevicz*, 915 F.2d at 850 (citing *Fletcher v. O'Donnell*, 867 F.2d 791, 793–94 (3d Cir. 1989) ("Custom may be established by proof of knowledge and acquiescence.") (other citation omitted). For purposes of establishing municipal liability, "[t]he necessary involvement of the policymaker can be demonstrated either through 'allegations of personal direction or of actual knowledge and acquiescence.'" *Valentin v. Phila. Gas Works*, 128 F. App'x 284, 286 (3d Cir. 2005) (quoting *Andrews v. City of Phila.* 895 F.2d 1469, 1478 (3d Cir. 1990)); *see also Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) (noting that, to sustain a § 1983 claim for municipal liability, the plaintiff must establish "'that policymakers

were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury.'") (quoting *Bielevicz v. Dubinon*, 915 F.3d 845, 851 (3d Cir. 1990)).

In this case, Plaintiff has failed to aver factual content sufficient to support a plausible inference that CYF (perhaps through Fitzgerald or Sturdivant) enacted a policy or custom that was the "moving force" behind the allegedly wrongful conduct. Instead, Plaintiff offers only the conclusory assertion that she is "establishing 'municipal liability'" based on the agency's "failure to properly train [its] employees [with respect to] the Constitutional rights of parents," CYF's "own written policies," HIPAA, and "the Mental Health Procedures Act of 1976." (Docket No. 16 at p. 2.) Assuming for the moment that Plaintiff has pled a predicate violation of her federal constitutional or statutory rights, the Court nevertheless finds that her averments are insufficient to establish a plausible basis for the agency's liability under a "failure to train" theory.

The Supreme Court has observed that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.,* at 1360. To state a claim under § 1983 for failure to train, a plaintiff must show that the defendant failed to offer some specific training that would have prevented the deprivation of the plaintiff's constitutional rights and that the defendant's failure to train or supervise employees amounted to "'deliberate indifference' to the rights of persons with whom those employees will come into contact.'" *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir.1999) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)); *see also Reitz v.*

*Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir.1997) (noting that plaintiff "must identify a failure to provide specific training"). *Monell* liability is ordinarily established by showing a pattern of constitutional violations, *see Brown*, 520 U.S. at 407; however, the Supreme Court has recognized that where a violation of federal rights is a "highly predictable consequence" of an inadequate municipal policy or custom in a situation that is likely to recur, municipal liability may attach upon a single application of that custom. *Id*. at 409–10; *see also Connick,* 563 U.S. 51, 131 S. Ct. at 1361 (a single incident may trigger municipal liability where unconstitutional consequences for failure to train are "patently obvious").

Here, Plaintiff has failed to allege any facts which could plausibly establish CYF's liability under a failure-to-train theory. Plaintiff has not identified any specific training that would have prevented the violation of her rights, nor has she alleged facts sufficient to show deliberate indifference on the part of CYF. No pattern of prior, similar constitutional violations has been alleged, nor has Plaintiff asserted facts that would satisfy the "single incident" theory of liability. Accordingly, Plaintiff's §1983 claims against CYF must be dismissed.

E. Plaintiff's Privacy-Related Claims

Defendants also move for dismissal of Plaintiff's privacy-related claims. These claims are based on the allegation that Berube and Tennant wrongly disclosed the mental health diagnoses of Plaintiff and her children in an August 6, 2012 court summary that was shared with two of the children's fathers. (Docket No. 6 at ¶4; Docket No. 16 at p. 3, ¶2.) In this manner, Plaintiff alleges, Steven Fey (A.F.'s father) and Donald Montgomery (M.M.'s father) gained

access to the mental health diagnoses of Plaintiff and those of her children whom they had not fathered. (Docket No. 16 at p. 3.)[5]

Plaintiff's Amended Complaint purports to assert this claim under HIPAA, 42 U.S.C. §1320. However, HIPAA provides no private remedy, as Plaintiff now appears to acknowledge. *See Marley v. Donahue*, 133 F. Supp. 3d 706, 718 (D.N.J. 2015); *Newsuan v. Colon*, No. 13–1199, 2013 WL 3989076, at *3 (E.D. Pa. Aug. 5, 2013) (collecting cases); *Hove v. Cleary*, No. 10–1876, 2011 WL 2223760, at *6 (D.N.J. June 6, 2011) (same). Accordingly, Plaintiff's HIPAA claim must be dismissed.

In the alternative, Plaintiff has asserted a claim under the Privacy Act of 1974, 5 U.S.C. 522a. The Privacy Act aims "to protect the privacy of individuals identified in government information systems by regulating the collection, maintenance, use and dissemination of personal information and prohibiting unnecessary and excessive exchange of such information within the government to outside individuals." *N'Jai v. Pittsburgh v. Bd. of Public Educ.*, 487 F. App'x 735, 737 (3d Cir. 2012) (internal quotation marks and citation omitted). To that end, the Act provides a civil remedy whenever a federal agency:

> **(A)** makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection;

---

[5]    Although Plaintiff has not named her minor children as complainants in this action, the wording of her pleading suggests that she is complaining of a violation of their privacy rights. As one federal district court has recently observed:

> Children may not be represented by non-attorneys in legal proceedings affecting their interests. *Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 883 (3d Cir. 1991) (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)). The right to counsel belongs to the child. *Id.* Parents cannot waive the right. Thus, parents, who are not attorneys and are acting *pro se*, may not bring claims on behalf of their children. *Lazaridis v. Wehmer*, 591 F.3d 666, 672 (3d Cir. 2010) (citing *Osei-Afriyie*, 937 F.2d at 882-83).

*Rodriguez v. Montgomery Cty. Office of Children & Youth*, No. CV 15-6186, 2016 WL 2897470, at *3 (E.D. Pa. May 17, 2016) (dismissing claims asserted by *pro se* litigant on behalf of her children). Here, Plaintiff is a non-lawyer proceeding *pro se*. In addition, her parental rights have been terminated as to B.H. and M.M. Accordingly, to the extent Plaintiff purports to assert claims on behalf of her minor children, such claims are dismissed.

**(B)** refuses to comply with an individual request under subsection (d)(1) of this section;

**(C)** fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or

**(D)** fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual...

5 U.S.C.A. § 552a (g)(1)(West). "Importantly, however, there is no private cause of action under the Privacy Act against a municipal or state agency." *N'Jai,* 487 F. App'x at 737 (citing *Pennyfeather v. Tessler*, 431 F.3d 54, 56 & n. 1 (2d Cir. 2005)). Nor, perforce, can there be a cause of action against the employees or agents of a municipal agency. *See* 5 U.S.C. §552a(g)(1) (providing a private right of action by individuals against "the [federal] agency"). Because Plaintiff is not asserting her Privacy Act claim against an appropriate federal agency, her claim under the Act is misplaced and must be dismissed.

F. <u>Plaintiff's Intentional Infliction of Emotional Distress Claim</u>

Plaintiff has also asserted claims against CYF and Berube for the intentional infliction of emotional distress. "Such a claim requires, 'at the least, [a demonstration of] intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff.'" *N'Jai v. Pittsburgh Bd. of Pub. Educ.*, 487 F. App'x 735, 737 (3d Cir. 2012) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)). Moreover, "a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct." *Id.; see also Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (discussing the state of the law in Pennsylvania regarding intentional infliction of emotional distress claims).

In broad brush, Plaintiff's intentional infliction of emotional distress claims are premised on complaints about the manner in which Berube performed her duties. Plaintiff generally alleges that Berube "made several attempts to go beyond her 'scope of practice' to invade personal details from my past to gain information for current [sic] case." (Docket No. 16 at p. 6.) Plaintiff further alleges that Berube disclosed private facts about her in court summaries, threatened to take Plaintiff's kids away if she did not "work with the agency," separated Plaintiff from her children, defamed her character, forced Plaintiff into various forms of counseling without first conducting a proper evaluation, and generally invaded her privacy. (*Id.*)

Defendants' sole argument for dismissal of this claim is the immunity afforded by Pennsylvania's Political Subdivision Tort Claim Act ("PSTCA"), 42 Pa. C.S.A. §8541 et seq. The PSTCA provides that local agencies such as CYF are immune from liability in tort, except in limited situations which do not apply here. *See id.* at §§ 8541-8542 (West). This immunity extends to intentional tort claims. *See Robinson v. Darby Borough*, No. 08-4561, 2010 WL 1462370, at *2 (E.D. Pa. Apr. 13, 2010). Moreover, employees of a local agency may be subject to personal liability only upon a judicial determination that they engaged in a "crime, actual fraud, actual malice or willful misconduct." *Roskos v. Sugarloaf Twp.*, 295 F. Supp. 2d 480, 489-90 (M.D. Pa. 2003) (citing 42 Pa. C.S.A. § 8550 and *Steiner v. City of Pittsburgh*, 509 A.2d 1368, 1370 (Pa. Commw. Ct. 1986)). Willful misconduct is "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." *Banks v. City of Philadelphia*, No. CV 14-82, 2016 WL 1238783, at *3 (E.D. Pa. Mar. 30, 2016) (quoting *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa.1994)).

In this case, Defendants' immunity argument is well-taken insofar as it relates to Plaintiff's claim against CYF; because the agency has immunity, the intentional infliction of emotional distress claim against CYF must be dismissed. Defendants do not address the issue of whether Plaintiff has sufficiently pled "willful misconduct" on Berube's part for purposes of overcoming immunity; under a liberal interpretation of her pleading, however, she has arguably done so. Moreover, the Court is of the view that the "willful misconduct" issue will be better resolved, in the context of this case, with the benefit of a more developed factual record or, at the very least, with the benefit of more robust briefing. As Defendants have offered no other basis for dismissing the intentional infliction of emotional distress claim against Berube, that claim can proceed forward at this juncture.

G. <u>Leave to Amend</u>

Ordinarily, *pro se* plaintiffs who fail to state a proper cause of action must be given leave to amend before a dismissal on the merits. *See Phillips v. County of Allegheny,* 515 F.3d 224, 245-46 (3d Cir. 2008). An exception to this rule applies where further amendment would be "inequitable or futile." *See id.*; *Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc*., 482 F.3d 247, 251 (3d Cir. 2007).

In this case, further amendment would be futile insofar as it relates to Plaintiff's claims under HIPAA, her claims under the Privacy Act, and her claim against CYF for the intentional infliction of emotional distress. Accordingly, those claims will be dismissed, with prejudice. Similarly, further amendment would not cure the jurisdictional problems that exist relative to Plaintiff's claims for injunctive relief; consequently, that claim may not be reasserted. On the other hand, the deficiencies that the court has discussed relative to Plaintiff's §1983 claims against CYF, Fitzgerald, and Sturdivant could conceivably be cured upon further amendment.

Those claims will therefore be dismissed without prejudice so that Plaintiff may have an opportunity to replead them, if appropriate.

## IV. CONCLUSION

Based upon the foregoing reasons, Defendants' renewed motion to dismiss will be granted as to: (i) Plaintiff's claims for injunctive relief; (ii) Plaintiff's monetary claims under the Health Insurance Portability and Accountability Act, (iii) Plaintiff's monetary claims under the Privacy Act of 1974; (iv) Plaintiff's monetary claims against CYF for the intentional infliction of emotional distress; and (v) Plaintiff's §1983 claims against CYF, Fitzgerald and Sturdivant. The dismissal will be without prejudice insofar as it relates to Plaintiff's §1983 claims against CYF, Fitzgerald, and Sturdivant, and Plaintiff will be given leave to reassert these claims to the extent she can do so in conformity with the principles outlined herein and the mandates of Federal Rules of Civil Procedure 8 and 11.

An appropriate order follows.

/s/ *Nora Barry Fischer*
Nora Barr Fischer
United States District Judge

Date: July 27, 2016

cc/ecf: Counsel of Record
(via Cm/ECF)

Alicia Hatfield
176 West Hills Drive, Apt. E-17
Greensburg, PA 15601
(Regular & Certified Mail)