IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALICIA HATFIELD,

        Plaintiff,

vs.

AMANDA BERUBE and KATHLEEN TENNANT,

        Defendants.

Civil Action No. 2:13-cv-00026

Judge Nora Barry Fischer

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to LCvR 56(B)(2), Defendants Amanda Berube and Kathleen Tennant file the following Brief in support of their Motion for Summary Judgment (ECF No. 65).

### I. FACTS

The material facts upon which Defendants' Motion for Summary Judgment and Brief rely are set forth in the separately filed Concise Statement of Material Facts, as required by LCvR 56(B)(1). Defendants incorporate the Concise Statement of Material Facts (ECF No. 66) as though set forth fully herein.

### II. PROCEDURAL HISTORY

Plaintiff, Alicia Hatfield, originally brought this civil rights action against Allegheny County Executive Rich Fitzgerald; the Mon Valley Regional Office of Allegheny County Children, Youth and Family Services ("CYF"); Marcia Sturdivant, the Executive Director of CYF; Amanda Berube, a CYF caseworker; and Kathleen Tennant, a CYF supervisor. (ECF Nos. 6 and 16). Plaintiff alleged violations of her Fourth and Fourteenth Amendment rights, as well as claims for Intentional Infliction of Emotional Distress ("IIED") and violations of the Health Insurance Portability and Accountability Act ("HIPAA") and/or the Privacy Act of 1974. (*Id*.). Plaintiffs'

1

claims were based on the removal of her children by CYF on March 12, 2012. (*Id.*). On April 5, 2013, the Defendants filed a Motion to Dismiss, which included a request that this Court abstain from hearing this case during the pendency of the underlying family court proceedings. (ECF Nos. 20, 21, and 26). On June 28, 2013, this Court partially granted the Defendants' request for abstention and stayed the case until the completion of Plaintiff's state court proceedings. (ECF No. 27). The case was reopened on March 10, 2016. (ECF No. 34). On April 4, 2016, the Defendants filed a renewed Motion to Dismiss. (ECF No. 36).

On July 27, 2016, this Court entered a Memorandum Opinion and corresponding Order partially granting the Defendants Renewed Motion to Dismiss. (ECF Nos. 39, 40). The Court's Order dismissed Plaintiff's claims for injunctive relief, HIPAA violations, Privacy Act of 1974 violations, IIED against CYF, and § 1983 violations against CYF, Fitzgerald, and Sturdivant. (*Id.*). The dismissal of Plaintiff's § 1983 claims against Fitzgerald and Sturdivant were without prejudice, pending a second amended complaint to be filed by August 10, 2016. (*Id.*). Plaintiff did not file a second amended complaint, and on August 11, 2016, this Court dismissed Defendants CYF, Fitzgerald, and Sturdivant with prejudice. (ECF No. 42).

As a result, the only defendants that remain in this matter are Amanda Berube and Kathleen Tennant, in their individual capacities. (ECF Nos. 39, 40, and 42). The only claims that remain are Plaintiff's § 1983 claims for violations of her Fourth and Fourteenth Amendment rights against both Defendants and her IIED claim against Defendant Berube. (*Id.*). This Court explained that these claims remained to the extent that Plaintiff "is seeking compensatory damages for harm that is not fairly traceable to the adverse [family] court orders, including any misconduct on the part of the Defendants which predated the adverse family court orders." (ECF No. 39, p. 12).

Pursuant to Fed. R. Civ. P. 56, the Defendants have filed a Motion for Summary Judgment and filed this Brief in support thereof.

### III. MOTION FOR SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This occurs where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Freeman v. Miller*, 615 F. App'x 72, 75 (3d Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (internal quotations omitted). Summary Judgment is appropriate because the nonmoving party failed meet the burden of proof as to an essential element of their case. *Celotex Corp.*, 477 U.S. at 322. In its analysis, the court credits the evidence of the non-movant and draws all justifiable inferences in the non-movant's favor. *Freeman v. Miller*, 615 F. App'x at 75.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the nonmoving party's claims. *Celotex Corp.*, 477 U.S. at 330; *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir.2007). The burden then shifts to the non-movant to go beyond the pleadings and show specific facts contained in the record to meet their burden of proving elements essential to his claim. *Celotex Corp.*, 477 U.S. at 322. The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell*, 2010 WL 2089639, at * 1 (3d Cir. 2010).

### IV. ARGUMENT

Plaintiff's overarching theory of liability remains her dissatisfaction with the outcome of the state court proceedings regarding her four children. While those proceedings are undoubtable difficult for all parties involved, this Court has made it clear that Plaintiff can only recover "compensatory damages for harm that is not fairly traceable to the adverse court orders" in this federal lawsuit. (ECF No. 39, p. 12). However, Plaintiff has failed to make a showing sufficient to

3

establish the existence of the elements essential to her case. Plaintiff cannot maintain her § 1983 claims because she has failed to establish violations of her Fourth and Fourteenth Amendment rights. Plaintiff can produce no evidence of Defendant Tennant's personal involvement in the alleged violations. Even if Plaintiff had been able to point to specific evidence of civil rights violations, the Defendants are entitled to immunity. Furthermore, Plaintiff cannot maintain a claim for IIED against Defendant Berube based on the evidence of record. Therefore, the Defendants are entitled to judgment as a matter of law.

    a.  **Plaintiff Cannot Maintain a § 1983 Claim Against Defendants as a Matter of Law**

Section 1983 is not a source of federal rights. *Baker v. McCollan*, 443 U.S. 137, 145 n. 3, 99 S.Ct. 2689 (1979). It is merely a means for vindicating constitutional and federal statutory rights, a means for an injured party to sue state officials who infringe upon those rights. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807 (1994). "To state a § 1983 claim, a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). To maintain a § 1983 lawsuit, the plaintiff must assert a specific federal constitutional or statutory right. *Brown v. Borough of Mahaffey*, 35 F.3d 846, 850 (3d Cir. 1994). Thus, "the first step in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Id*. (internal quotations omitted).

While Plaintiff has consistently claimed violations of her Fourth and Fourteenth Amendment rights, she has been unable to articulate the exact contours of the violation of those rights. Initially, Plaintiff can point to no evidence that Defendant Tennant can be held liable as Defendant Berube's supervisor. Furthermore, there is no evidence in the record that would support a claim that the Defendants violated her Fourth Amendment rights. Nor are Plaintiffs vague

4

assertions regarding the violation of her Fourteenth Amendment rights supported by the evidence in this case. However, even if Plaintiff had established and supported specific civil rights violations, the Defendants are entitled to both qualified and absolute immunity.

### i. Defendant Tennant Cannot Be Held Liable as a Supervisor

"A defendant in a civil rights action must have personal involvement in the alleged wrongs. Liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. *Rode*, 845 F.2d at 1207; *see also Keenan v. Philadelphia*, 983 F.2d 459, 466 (3d Cir. 1992); *Andrews v. Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990). Personal involvement can also be shown through proof of direct discrimination by the supervisor. *Andrews*, 895 F.2d at 1478; *Keenan*, 983 F.2d at 466. In order for a supervisory official to be found legally responsible for a violation of a plaintiff's constitutional rights, the official "must have played an affirmative role in the deprivation of the plaintiffs' rights…the officials' misconduct cannot be merely a failure to act." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Andrews*, 895 F.2d 1469 at 1478; *see Rizzo v. Goode*, 423 U.S. 362, 377, 96 S.Ct. 598, 607 (1976).

A Plaintiff cannot support a § 1983 claim against a supervisor based solely on factual allegations that the supervisor's signature appears on particular forms. *See Thomas v. Barkley*, No. 13–551, 2013 WL 4786124, at *6 (W.D.Pa. Sept.6, 2013) (finding in a former Pennsylvania state inmate's § 1983 action against Board Secretary Barkley that Barkley's mere signature on a Board decision does not "raise[ ] a plausible inference that Barkley was responsible for calculating [the plaintiff's] release date, or that she participated personally in any violation of [the plaintiff's] rights."); *Goodwine v. Keller*, No. 09–1592, 2012 WL 4482793, at *8 (W.D.Pa. Sept. 26, 2012) (noting that "[t]he denial of a grievance or mere concurrence in an administrative appeal process

5

is insufficient to establish personal involvement [on the part of defendants].").When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. *Buehl v. Fisher*, No. 3:CV-10-2288, 2014 WL 1334219, at *13 (M.D. Pa. Apr. 2, 2014).

Here, Plaintiff has produced no evidence that establishes Defendant Tennant's personal involvement in the alleged violations of Plaintiff's rights. Plaintiff stated that the first time she met Defendant Tennant was in relation to this federal court matter. (Exhibit C, Plaintiff's Deposition, 29:2-10). Defendant Tennant did not personally visit Plaintiff's home, nor did she personally attend any of Plaintiff's state court proceedings. (Exhibit C, Plaintiff's Deposition, 29:13-21). Plaintiff merely hypothesizes that Defendant Tennant may have had knowledge or personal involvement in the deprivation of Plaintiff's rights based on Defendant Tennant's signature appearing on various documents filed with the state court. (Exhibit C, Plaintiff's Deposition, 30:6-13).

However, Plaintiff is unable to show specific facts that support her conclusory allegations regarding Defendant Tennant's personal involvement. (Exhibit C, Plaintiff's Deposition, 33:6-13). Plaintiff stated that she never witnessed Defendant Tennant personally directing Defendant Berube. (Exhibit C, Plaintiff's Deposition, 30:14-17). Plaintiff stated that even though she spoke to Defendant Tennant on the telephone on at least two occasions, Plaintiff never related her constitutional concerns regarding Defendant Berube to Defendant Tennant. (Exhibit C, Plaintiff's Deposition, 31:14-20, 32:18). Therefore, Plaintiff's claims against Defendant Tennant must fail as a matter of law.

### ii.  Plaintiff Failed to Establish a Claim Under the Fourth Amendment

"[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *United States v. Hartwell*, 436 F.3d

174, 178 n. 4 (3d Cir.2006) (quoting *Kyllo v. United States*, 533 U.S. 27, 33, 121 S.Ct. 2038 (2001)). However, "a search conducted pursuant to consent is one of the specifically established exceptions to the warrant requirement." *United States v. Wilson*, 413 F.3d 382, 388 (3d Cir. 2005); *Breakwell v. Allegheny Cty. Dep't of Human Servs*., 406 F. App'x 593, 599 (3d Cir. 2010) (finding that consensual home visits by CYF caseworkers do not implicate the Fourth Amendment).

While it is difficult to ascertain the exact outlines of her Fourth Amendment claim, it seems as though Plaintiff is proceeding based on her allegations that Defendant Berube illegally searched her home. (*See* Exhibit C, Plaintiff's Deposition, 15:18-25, 16:1-7; ECF No. 16, Plaintiffs More Definite Statement, p. 2). Prior to the initiation of state court proceedings, Defendant Berube only entered Plaintiffs home on two occasions. (*See* Exhibit B, Berube Declaration, ¶¶ 6-7). It is undisputed that nothing involving Defendant Berube's February 7th visit violated her constitutional rights. (*See* Exhibit C, Plaintiff's Deposition, 43:16-20). Thus, the only instance that could give rise to a violation of Plaintiff's Fourth Amendment rights is Defendant Berube's home visit on February 22, 2012.

Defendant Berube had consent to enter Plaintiff's home on February 22, 2012. (*See* Exhibit C, Plaintiff's Deposition, 45:7; Berube Declaration, ¶ 7(c)). When Defendant Berube arrived that day, Mr. Fey answered the door and let her in to the home. (Exhibit C, Plaintiff's Deposition, 45:8-9). Plaintiff could not hear any conversation between Mr. Fey and Defendant Berube as they re-entered the home. (Exhibit C, Plaintiff's Deposition, 45:25, 46:1-2). Defendant Berube did not force her way into the home, nor did Plaintiff ask Defendant Berube to leave at any point during the visit. (Exhibit C, Plaintiff's Deposition, 46:7-10, 54:3-5; Exhibit B, Berube Declaration, ¶ 7(e)). Mr. Fey escorted Defendant Berube throughout the home. (Exhibit C, Plaintiff's Deposition, 49:10-11, 51:22-23; Exhibit B, Berube Declaration, ¶ 7(d)). The walkthrough included the second floor, access to which was temporarily blocked. (Exhibit C, Plaintiff's Deposition, 54:14-21). Mr.

Fey voluntarily removed the physical barrier. (*Id.*). Plaintiff did not forbid Defendant Berube's walkthrough of the home. (Exhibit C, Plaintiff's Deposition, 104:3-14).

Defendant Berube's consensual entrance into and walkthrough of Plaintiff's home did not violate Plaintiff's Fourth Amendment rights. Moreover, regardless of the vague allegations throughout her pleadings, Plaintiff cannot point to any specific facts contained in the record to meet her burden of proving the elements essential to her Fourth Amendment claim. Therefore, the Defendants are entitled to judgment as a matter of law and Plaintiff's Fourth Amendment claim should be dismissed.

### iii. Plaintiff Failed to Establish a Claim Under the Fourteenth Amendment

It is unclear whether Plaintiff's claim under the Fourteenth Amendment is based on alleged violations of her substantive due process rights or her procedural due process rights. Regardless of the basis, Plaintiff cannot sufficiently support a claim against the Defendants for a violation of her Fourteenth Amendment rights.

#### 1. Substantive Due Process

While the Third Circuit recognizes parental custody, care, and management of children may be constitutionally protected liberty interests, those interests are not absolute. *Studli v. Children & Youth And Families Cent. Reg'l Office*, 346 F. App'x 804, 811 (3d Cir. 2009) (citing *Croft v. Westmoreland County CYS*, 103 F.3d 1123, 1125 (3d Cir.1997). The fundamental familial liberty interests must be balanced with the "compelling interests of the state in protecting children from abuse." *Id*. When a plaintiff claims abusive action against a member of the executive branch, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Miller v. City of Philadelphia*, 174 F.3d 368, 374–75 (3d Cir. 1999) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1716 (1998). A substantive due process violation by a social worker must be more than negligence or deliberate indifference; it must "reach a level of

gross negligence" or be "so clearly arbitrary" that it "can properly be said to shock the conscience." *Studli*, 346 F. App'x at 811 (citing *Miller*, 174 F.3d at 375–76).

Plaintiff has produced no evidence of conduct on the part of the Defendants that can be classified as negligent, let alone conduct that shocks the conscience. Initially, it would seem that Plaintiff's central issue lies in her dissatisfaction with the state court proceedings. The only allegation Plaintiff has offered to this point that may be considered as unrelated to the state court orders is her claim that Defendant Berube "threatened" Plaintiff in order to facilitate Plaintiff's compliance with CYF's recommendations. (*See* Exhibit C, Plaintiff's Deposition, 5:15-25, 56:1-2; Exhibit B, Berube Declaration, ¶ 7(f)). However, the evidence indicates that Defendant Berube had multiple concerns for the children's' safety, not the least of which was the deplorable condition of the home. (Exhibit D, 3-15-2012 Dependency Petition, AC-AH_000100). Under the circumstances, Defendant Berube related a realistic possibility based on her first-hand knowledge of the facts at the time. Facts that, when weighed and measured by the state court, provided the basis for the revocation of Plaintiffs parental rights. The Defendants' conduct in this matter cannot be said to shock the conscience. Therefore, Plaintiff cannot maintain her Fourteenth Amendment claim and the Defendants are entitled to judgment as a matter of law.

**2. Procedural Due Process**

To establish a claim for a violation of the procedural due process rights protected by the Fourteenth Amendment, a plaintiff must show that "(1) there has been a deprivation of liberty or property in the constitutional sense; and (2) the procedures used by the state to effect this deprivation were constitutionally inadequate." *Callahan v. Lancaster–Lebanon Intermediate Unit 13*, 880 F.Supp. 319, 332 (E.D.Pa.1994). Pursuant to 23 Pa.C.S.A. § 6315, "an individual taking a child into protective custody shall ... within 24 hours in writing notify the parent, guardian or other custodian of the whereabouts of the child ... and the reasons the child was taken into protective

custody." 23 Pa.C.S.A. § 6315(c). Also, an informal hearing must be scheduled within 72 hours. 23 Pa.C.S.A. § 6315(d).

Plaintiff's only allegation that seems to be related to her procedural due process is that she was unable to view the state court orders authorizing the removal of her children. (*See* ECF No. 16, p. 2; Exhibit C, Plaintiff's Deposition, 59:7-13). However, the evidence shows that Mr. Fey, who lived in the home with Plaintiff, did receive a copy of the Order. (Exhibit B, Berube Declaration, ¶ 8(d)). Plaintiff then attended a shelter hearing regarding the removal of her children two days later, on March 14, 2012. (Exhibit C, Plaintiff's Deposition, 26:5-11). Thus, Plaintiff had access to the written authorization for the removal, and Plaintiff was provided with a hearing within 72 hours. Plaintiff has not asserted that the Defendants violated the procedural process required upon the removal of children from her home, nor does she challenge the adequacy of those procedures. Therefore, Plaintiff cannot maintain a claim for violation of her procedural due process rights.

### iv. Defendants Are Entitled to Immunity

If the Court determines that the plaintiff has alleged a deprivation of a constitutional right, it would proceed to determine whether the individual defendants are entitled to qualified immunity. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 n.2 (3d Cir. 2006). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009). Under the doctrine of qualified immunity, "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

To be clearly established, a right must be set forth such that every reasonable official would have understood that what the individual is doing violates that right. *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). A government actor is entitled to qualified immunity if he or she "reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 244. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Taylor*, 135 S. Ct. at 2044.

It is well-settled law that child welfare agency officials and child care workers are entitled to qualified immunity in the performance of their discretionary functions. *See Bayer v. Monroe Cnty. Children & Youth Servs.*, 577 F.3d 186, 193 (3d Cir. 2009) (qualified immunity for caseworker and supervisor for a "Shelter Hearing" not being held within 72 hours of removal); *Doe v. Hennepin*, 858 F.2d 1325 (8th Cir. 1988), *cert. denied*, 490 U.S. 1108 (1989) (qualified immunity for "removal" decisions absent a showing of malice or improper motives); *Robison v. Via*, 821 F.2d 913 (2d Cir. 1987) (state trooper and state attorney "removing" child from home entitled to qualified immunity because it was objectively reasonable to do so and no clearly established rights violated); *Frazier v. Bailey*, 957 F.2d 920 (1st Cir. 1992) (child care workers entitled to qualified immunity because no clearly established rights of plaintiff violated); *Hidahl v. Gilpin Co.*, 938 F.3d 1150 (10th Cir. 1991) (social workers who filed a dependency and neglect proceeding entitled to qualified immunity, actions did not violate clearly established right); *Callahan v. Lancaster- Lebanon Intermediate Unit*, 880 F. Supp. 319 (E.D.Pa. 1994) (qualified immunity applies to officials and caseworkers for removing children).

To the extent that any of the Defendants' aggrieved conduct fell within the scope of the dependency proceedings and the preparations therefore, Defendants are entitled to absolute immunity. *Bayer v. Monroe County Children & Youth Servs.*, 577 F.3d 186, 2009 WL 2477627, *5 (3d Cir. Aug.14, 2009). This conduct includes "actions on behalf of the state in preparing for,

11

initiating, and prosecuting dependency proceedings. [Social workers'] immunity is broad enough to include the formulation and presentation of recommendations to the court in the course of such proceedings." *Ernst v. Child & Youth Servs. of Chester County*, 108 F.3d 486, 495 (3d Cir.1997).

The Defendants argue that their conduct does not rise to the level of a constitutional violation. However, if Plaintiff had alleged a viable civil rights claim, the Defendants are entitled to qualified immunity. Defendant Berube acted reasonably under the circumstances and had no reason to believe that her conduct violated Plaintiff's constitutional rights. Defendant Berube had consent to enter the Hatfield home each time she visited, so it was reasonable for her to believe that her conduct complied with the law. Furthermore, there is no evidence that Defendant Berube was plainly incompetent or that she knowingly violated the law at any other time during her interactions with Plaintiff. Moreover, the Defendants conduct related to the state court proceedings, including the formulation and presentation of recommendations to the court, are protected by absolute immunity. Therefore, the Defendants are entitled to judgment as a matter of law and Plaintiff's civil rights claims should be dismissed.

### b. Plaintiff Cannot Maintain a Claim for IIED as a Matter of Law

As a threshold issue, there is some question as to whether Pennsylvania law recognizes a cause of action for IIED.[1] *Rankin v. Smithburger*, No. 2:12-CV-01373, 2013 WL 3550894, at *17 (W.D. Pa. July 11, 2013) (*citing Swisher v. Pitz*, 2005 Pa. Super. 56, 868 A.2d 1228, 1230 (2005)). However, the Pennsylvania Supreme Court has indicated that if such a cause of action does exist, a plaintiff would at least have to demonstrate, "intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff." *Id*. Also, "a plaintiff must suffer

---

1. The Pennsylvania Supreme Court has yet to explicitly adopt the Restatement (Second) of Torts § 46 Outrageous Conduct Causing Severe Emotional Distress. Because the plaintiff in *Kazatsky* failed to present medical evidence, the court did not find it necessary to reach the question of whether to allow causes of action for IIED in Pennsylvania. *Gray*, at n.2. However, "[i]t is clear that Pennsylvania courts may permit an IIED claim to proceed in appropriate circumstances." *Wilson v. Am. Gen. Fin. Inc*., 807 F. Supp. 2d 291, 303 (W.D. Pa. 2011).

some type of resulting physical harm due to the defendant's outrageous conduct." *Id*. "The conduct must be so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Id*. (internal quotation omitted). The element of outrageousness is for the court to determine in the first instance. *Id*.

"In Pennsylvania, the standard for intentional infliction of emotional distress is extremely high; the alleged conduct must be extreme and outrageous." *Gatter v. Zappile*, 67 F. Supp. 2d 515, 521 (E.D. Pa. 1999), *aff'd*, 225 F.3d 648 (3d Cir. 2000) (*citing Hunger v. Grand Central Sanitation*, 447 Pa. Super. 575, 670 A.2d 173, 177 (1996)). Pennsylvania courts have limited the types of activities they have found to be "outrageous" as a matter of law. *See Swisher*, 868 A.2d at 1231 (collecting cases); *see e.g*. *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970) (defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents); *Banyas v. Lower Bucks Hospital*, 293 Pa. Super. 122, 437 A.2d 1236 (1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

Furthermore, the Pennsylvania Supreme Court "clearly articulated in *Kazatsky v. King David Memorial Park, Inc.,* 515 Pa. 183, 527 A.2d 988 (1987), that, to the extent the tort of IIED is recognized in this Commonwealth, recovery is limited to those cases in which competent medical evidence of emotional distress is presented by the claimant." *Gray v. Huntzinger*, 2016 PA Super 194 (Aug. 30, 2016).

Even if Plaintiff were able to maintain a claim for IIED against Defendant Berube, the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA") envelopes Allegheny County and all of its employees with a broad grant of immunity for all torts except those that fit within eight exceptions. 41 Pa.C.S. § 8541, §8542(b). The purpose of the PSTCA is to insulate political subdivisions and their employees from liability. *Mascaro v. Youth Study Center*, 523 A.2d 1118, 1120 (Pa. 1987). The PSTCA is to be strictly construed and narrowly interpreted in favor of limiting government liability. *Walsh v. City of Philadelphia*, 585 A.2d 445, 451 (Pa. 1991). Employees of a local agency can only be subject to personal liability upon a judicial determination that they engaged in a "crime, actual fraud, actual malice or willful misconduct." *Roskos v. Sugarloaf Twp.*, 295 F. Supp. 2d 480, 489-90 (M.D.Pa. 2003).

While circumstances involving the termination of parental rights are fraught with emotion, the evidence in this matter does not support Plaintiff's claim for IIED against Defendant Berube. Plaintiff is unable to demonstrate intentional outrageous or extreme conduct by Defendant Berube which caused severe emotional distress to Plaintiff. Plaintiff has suffered no physical damage as a result of the alleged IIED. (Exhibit C, Plaintiff's Deposition, 99:20-25, 100:1). Moreover, Plaintiff did not seek treatment of any kind for her alleged emotional distress from any medical professional. (Exhibit C, Plaintiff's Deposition, 98:22-25, 99:1). Because she has not seen a psychologist or psychiatrist for the alleged injuries related to her claim of IIED, she is unable to produce medical evidence of emotional distress. (Exhibit C, Plaintiff's Deposition, 99:13-18). Had Plaintiff established a viable claim for IIED, Defendant Berube would be immune under the PSTCA. There is no evidence in the record to show that Defendant Berube engaged in a crime, actual fraud, actual malice, or willful misconduct. Therefore, Plaintiff's claim for IIED against Defendant Berube must fail as a matter of law.

## V. CONCLUSION

Plaintiff has failed to show evidence that would establish her Fourth Amendment claim, Fourteenth Amendment claim, or her claim for IIED. Therefore, the Defendants are entitled to judgment as a matter of law and judgment should be granted in their favor.

Respectfully submitted,

*/s/ Benjamin Trodden*
Benjamin Trodden
Pa. I.D. No. 318406
Allegheny County Assistant Solicitor

Allegheny County Law Department
300 Fort Pitt Commons Building
445 Fort Pitt Boulevard
Pittsburgh, PA 15219
421-350-5592
Benjamin.trodden@alleghenycounty.us

## **CERTIFICATE OF SERVICE**

I, Benjamin Trodden, Assistant County Solicitor, certify that a true and correct copy of Defendants' BRIEF IN SUPPORT OF SUMMARY JUDGMENT was served on the following by e-mail and First Class Mail on the 13th of February 2017:

*Emtalicia78@gmail.com*
Alicia Hatfield
176 W. Hills Drive, Apt. E-17
Greensburg, PA 15601
(*Pro Se Plaintiff*)

Respectfully submitted,

*/s/ Benjamin Trodden*
Benjamin Trodden
Pa. I.D. No. 318406
Allegheny County Assistant Solicitor

Allegheny County Law Department
300 Fort Pitt Commons Building
445 Fort Pitt Boulevard
Pittsburgh, PA 15219
421-350-5592
Benjamin.trodden@alleghenycounty.us